RONALD J. TENPAS
ASSISTANT ATTORNEY GENERAL, ENRD
STACEY H. MITCHELL
CHIEF, ENVIRONMENTAL CRIMES SECTION
JAMES B. NELSON, NVSB # 9134
TRIAL ATTORNEY

THOMAS E. MOSS
UNITED STATES ATTORNEY
MICHAEL J. FICA, ISB # 5634
ASSISTANT U.S. ATTORNEY
801 E. SHERMAN, SUITE 192
POCATELLO, IDAHO 83201
(208) 478-4166

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

POCATELLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR-08-55-E-BLW |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **PLEA AGREEMENT** |
| | ) | |
| DAHLE CONSTRUCTION, L.L.C., | ) | |
| Defendant. | ) | |
| | ) | |

I.   **INTRODUCTION**

A.   This document contains the complete plea agreement (Agreement) between the

United States of America and Defendant DAHLE CONSTRUCTION, L.L.C. (DAHLE

CONSTRUCTION), an Idaho corporation doing business in Idaho.  No other agreement,

understanding, promise or condition exists between the parties.

B.   The parties expressly agree and acknowledge that this Agreement is entered into

and controlled by Fed. R. Crim. P. 11(c)(1)(B).  The Court may accept or reject the

Dahle Construction, L.L.C.
Plea Agreement
Page 1

recommendations or requests of the parties. This means that the Defendant may not withdraw from this Agreement if the Court deviates from the sentencing recommendations made by the United States or by the Defendant.

      C.     This Agreement does not limit the rights of any party to speak at the time of sentencing consistent with the recommended provisions set forth in the Agreement, correct inaccuracies or provide the Court or the United States Probation Office (Probation Office) with a full description of the Defendant's conduct that gave rise to the charge. The parties agree to allocute at sentencing in favor of the joint recommendation regarding the appropriate sentence as set forth in this agreement.

      D.     This Agreement is limited to the United States Attorney's Office for the District of Idaho (United States Attorney's Office) and the Environmental Crimes Section of the United States Department of Justice and does not bind any other federal, state or local prosecutive or regulatory authority.

      E.     The Defendant agrees that it has been fully advised of its statutory and Constitutional rights, that it has been informed of the charges and allegations against it and the possible penalties, and that it understands them. The Defendant further agrees that it understands that by entering a plea of guilty as set forth below, it will be waiving certain statutory and constitutional rights to which it is otherwise entitled.

      F.     The United States and the Defendant agree that Chapter 8 of the Federal Sentencing Guidelines Manual governs this case with regard to probation, subject to and consistent with the nature of this Rule 11(c)(1)(B) agreement; however, pursuant to U.S.S.G. § 8C2.1, to determine the fine amount for Offenses Involving the Environment under Chapter

Dahle Construction, L.L.C.
Plea Agreement
Page 2

Two, Part Q of the U.S.S.G., § 8C2.10 applies.

## II.    THE AGREEMENT

      A.    The Defendant agrees to:

      1.    Plead guilty to an Information charging it with one misdemeanor count of violating Title 33 of the United States Code, Sections 1311(a), 1319(c)(1)(A), and 1344 (Clean Water Act), by causing the discharge of dredged and fill materials into a water of the United States when it knew or should have known that it was acting without and in violation of a permit issued by the United States Army Corps of Engineers.

      2.    Acknowledge responsibility for the acts and omissions constituting the crime alleged in the Information and constituting the factual basis for its plea of guilty, which facts are set forth below in Section VI of this Agreement.

      3.    Have its representative, duly authorized by the Defendant's Board of Directors and with authority to speak for the Defendant, appear and enter the guilty plea and also appear for imposition of sentence.

      4.    Provide to the United States and the Court written evidence, in the form of a notarized resolution of its Board of Directors with both notary and corporate seals, certifying that the Defendant is authorized to waive its right to Indictment, to plead guilty to the Information in this case, and to enter into and comply with all provisions of this Agreement. The resolution shall further certify that the Defendant's authorized representative is authorized to take these actions and that all corporate formalities, including but not limited to approval by Defendant's directors, required for such authorization have been observed.

      5.    Forfeit its right to appeal any sentence imposed in conformity with the

provisions of this Rule 11(c)(1)(B) Agreement. The parties agree not to make any public statement, other than as required by law, prior to the filing of the Information. However, the parties specifically reserve the right to make public statements or filings that do not contradict the facts set forth in the Information and the terms of this Agreement after the filing of the Information.

      6.    Pay a fine of $25,000 as specified in paragraph IV.A of this Agreement.

      7.    Be placed on organizational probation for a probationary period of three years as specified in paragraph IV.C of this Agreement.

    B.    The Government agrees that in exchange for the Defendant's full and complete compliance with the terms of this Agreement:

      1.    It will not seek additional criminal prosecution against DAHLE CONSTRUCTION, or any other affiliated or related corporate entity, for the unpermitted discharge of dredge and fill materials into waters of the United States from the Wagonhammer Campground property located near North Fork, Idaho, during the period from June 10, 2005 through November 14, 2005. This Agreement does not limit the Government's right to prosecute any offenses based on facts of which it was unaware as of the date of this Agreement. The parties understand that this Agreement does not apply to any individuals, including but not limited to present and former employees, officers, agents and contractors. The parties further understand that this Agreement applies only to federal criminal charges and only binds the U.S. Attorney's Office for the District of Idaho and the Environmental Crimes Section of the United States Department of Justice.

Dahle Construction, L.L.C.
Plea Agreement
Page 4

III.   **PENALTIES**

The maximum penalty for the count in the Information is a fine of $200,000.00 or twice

the gross gain or loss resulting from the unlawful conduct, 18 U.S.C. § 3571; three years

probation; and a special assessment of $125.00, 18 U.S.C. § 3013(a)(1)(B).

IV.   **RECOMMENDATIONS AS TO SENTENCE**

Pursuant to Fed. R. Crim. P. 11(c)(1) and (2), the parties agree that the following

sentence is appropriate and should be imposed in this case:

A.   DAHLE CONSTRUCTION shall pay a fine of $25,000.

B.   DAHLE CONSTRUCTION shall pay a mandatory special assessment of

$125.00 to the Victim's Assistance Fund, pursuant to Title 18, United States Code, Section

3013(a)(1)(B).

C.   DAHLE CONSTRUCTION shall be placed on organizational probation for a

period of three years.  In addition to the Court's standard conditions of probation and in addition

to conditions that may be set by the Court, the terms of probation shall include the following

specific conditions:

1.   DAHLE CONSTRUCTION  shall commit no further violations of

environmental laws, regulations or permits of the United States, including those for which

primary enforcement has been delegated to a state.

2.   DAHLE CONSTRUCTION agrees to train all employees annually

about the requirements of environmental laws, regulations, and permits and about the necessity

of personal responsibility in enforcement of environmental laws, regulations, and permits.

3.   DAHLE CONSTRUCTION understands this Agreement does not

Dahle Construction, L.L.C.
Plea Agreement
Page 5

confer any immunity on the Defendant or any of its officers, employees or directors for making false statements to the Government or giving untruthful testimony under an oath at any judicial proceeding, nor does this Agreement provide use immunity or derivative use immunity to the Defendant or any of its officers, employees or directors for any statements.

## V.   ELEMENTS

The elements of the offense described in the Information, to which the Defendant agrees to plead guilty based on the theory of vicarious liability, are as follows:

1.   DAHLE CONSTRUCTION contracted with and agreed to perform excavation and other work for Abner Schultz, d/b/a Wagonhammer Campground near North Fork, Idaho in June and November 2005;

2.   That on or about and between November 5, 2005, and November 14, 2005, DAHLE CONSTRUCTION employees, who were acting in the normal course of their employment and for the intended benefit of DAHLE CONSTRUCTION, did discharge "pollutants" consisting of dredge and fill materials;

3.   That the pollutants were discharged from a point source, consisting of a bulldozer or backhoe;

4.   That the pollutants were discharged into a water of the United States, specifically the Salmon River; and

5.   That the discharge was committed without and in violation of a permit issued by the United States Army Corps of Engineers.

## VI.     FACTUAL BASIS

The conduct described below constitutes a factual basis for the violations contained in Count One of the Information.  The Defendant, as a corporation, is criminally liable for the acts of its employees comprising the essential elements of the offense with which it is charged.  The parties stipulate that, for the purposes of this Agreement, the following provides a factual and legal basis for the Defendant's conviction of the crime charged in the Information.

### A.     The Defendant

DAHLE CONSTRUCTION is an active Idaho State Corporation.  Kent C. Dahle, a resident of Salmon, Idaho, owns and has sole control of Dahle Construction.

### B.     The Defendant's Conduct

The Wagonhammer Campground is located at 1826 Highway 93 North, North Fork, Idaho 83466.  Abner Schultz ("Schultz"), a resident of Lake Havasu, Arizona, owns Wagonhammer Campground and operates it as a retirement business.  The Wagonhammer Campground property is bordered on one side by Highway 93N on the east and by the Salmon River on the west.

On or about November 8, 2005, Schultz approached Dahle seeking to hire DAHLE CONSTRUCTION to perform excavation work at the Campground property.  Specifically, Schultz requested that DAHLE CONSTRUCTION dredge material out of the bottom of a "pond" on his property, so that Schultz could use the material to fill in low-lying areas on the Campground property.  The "pond" was not, however, a free-standing body of water.  Rather, it was a slough adjacent to and tributary to the Salmon River that was fed by spring- and surface-water flows.

Dahle Construction, L.L.C.
Plea Agreement
Page 7

Dahle personally inspected the "pond" on the Wagonhammer Campground property. Dahle informed Schultz that, in order to perform the work, it would be necessary to construct an earthen cofferdam[1] to separate the "pond" from the Salmon River. Once separated, it would be necessary to pump water from the "pond." Dahle and Schultz agreed that a cofferdam would be constructed and that muddy water would be pumped from the "pond" to an island in the middle of the Salmon River.

Schultz had shown Dahle a piece of paper earlier in the summer of 2005, which Schultz purported to be a permit authorizing the work. Dahle did not read the permit. Nevertheless, Dahle agreed that DAHLE CONSTRUCTION would perform the work for Schultz. Dahle informed Schultz that he (Dahle) would likely not be on-site when the work was performed. It was agreed that, when Dahle was not present at the work site, Schultz would supervise DAHLE CONSTRUCTION employees and direct their work.

On or about and between November 11, 2005, and November 14, 2005, DAHLE CONSTRUCTION employees, in the course of their employment and for the intended benefit of DAHLE CONSTRUCTION, performed excavation work on the Wagonhammer Campground property. As agreed, the employees constructed an earthen cofferdam by placing rock and dirt between the mouth of the "pond" and the Salmon River. Schultz was present during the cofferdam's construction and supervised the work. The cofferdam separated the hydrological connection between the Salmon River and the backwater channel, allowing DAHLE CONSTRUCTION employees to pump water out of the "pond" without having water flowing into the "pond" from the Salmon River.

---

[1] A cofferdam is a structure designed to create a watertight barrier between two bodies of water.

Dahle Construction, L.L.C.
Plea Agreement
Page 8

At Schultz's instruction, DAHLE CONSTRUCTION employees then, in the course of their employment and for the intended benefit of DAHLE CONSTRUCTION, used an excavator to "drag and rake" material from the "pond" in order to deepen it. DAHLE CONSTRUCTION employees used a length of hose connected to a "trash pump" to draw water out of the "pond" prior to and during excavation. DAHLE CONSTRUCTION employees described the water as "muddy" because construction of the cofferdam, as well as the excavation work, stirred up sediment in the water. It was agreed that DAHLE CONSTRUCTION employees would pump the water onto an island across a side-channel of the Salmon River. No barriers were placed to keep the muddy water from flowing into the Salmon River itself.

At Schultz's instruction, DAHLE CONSTRUCTION employees, in the course of their employment and for the intended benefit of DAHLE CONSTRUCTION, placed dredged material from the backwater channel and pond along the banks of the Salmon River, below the ordinary high water mark, and in low-lying wetland areas connected to the backwater channel on the Wagonhammer Campground property. All told, between November 11, 2005, and November 14, 2005, DAHLE CONSTRUCTION employees placed approximately 200 cubic yards of dredged material around the Wagonhammer Campground property, a portion of which was placed below the ordinary high water mark of the Salmon River and the spring-fed tributary.

On or about November 15, 2005, the project was halted by a cease and desist order issued by the Idaho Department of Water Resources. Following the cease and desist order, Dahle learned that the permit that Schultz showed him did not authorize any of the work that DAHLE CONSTRUCTION performed. In fact, the permit only authorized Schultz to fill in a limited 12

by 30 foot area in the backwater channel, and that work must have been performed between July

1 and August 15 when the Salmon River was in low flow.

**For THE UNITED STATES:**

THOMAS E. MOSS
UNITED STATES ATTORNEY

By:

MICHAEL J. FICA                                    Date: 3/24/08
Assistant United States Attorney

RONALD J. TENPAS
ASSISTANT ATTORNEY GENERAL
UNITED STATES DEPARTMENT OF JUSTICE
ENVIRONMENT AND NATURAL RESOURCES DIVISION

By:

                                                    Date: 3/20/08

JAMES B. NELSON
Trial Attorney
Environmental Crimes Section

---

**For DAHLE CONSTRUCTION, L.L.C.:**

Kent C. Dahle                                       Date: 3-18-08
Kent C. Dahle
DAHLE CONSTRUCTION, L.L.C.

                                                    Date: March 20, 2008
Donald L. Harris
Counsel for
DAHLE CONSTRUCTION, L.L.C.

Dahle Construction, L.L.C.
Plea Agreement
Page 10

by 30 foot area in the backwater channel, and that work must have been performed between July

1 and August 15 when the Salmon River was in low flow.

**For THE UNITED STATES:**

THOMAS E. MOSS
UNITED STATES ATTORNEY

By:

_____                    Date:_____

MICHAEL J. FICA
Assistant United States Attorney

RONALD J. TENPAS
ASSISTANT ATTORNEY GENERAL
UNITED STATES DEPARTMENT OF JUSTICE
ENVIRONMENT AND NATURAL RESOURCES DIVISION

By:

_____                    Date:_____

JAMES B. NELSON
Trial Attorney
Environmental Crimes Section

**For DAHLE CONSTRUCTION, L.L.C.:**

_____                    Date:___3-/8-08___

Kent C. Dahle
DAHLE CONSTRUCTION, L.L.C.

_____                    Date: March 20, 2008

Donald L. Harris
Counsel for
DAHLE CONSTRUCTION, L.L.C.

**Dahle Construction, L.L.C.**
**Plea Agreement**
**Page 10**